UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ETHA T. KING IRREVOCABLE TRUST,** *et al.,* | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Civil Action No. CV-10-S-2978-NW<br>) |
| **WELLS FARGO & CO.,** *et al.,* | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs — the Etha T. King Irrevocable Trust, Etha T. King, Judy Berry, Kathy Steele, and Loyd King — originally filed this case on October 4, 2010, in the Circuit Court of Lauderdale County, Alabama. They asserted claims against defendants Wells Fargo & Company, Wachovia Bank, N.A., Stephen Vickers, Charles Walker, and Greg Robinson for breach of fiduciary duty, negligence, wantonness, breach of trust and/or breach of contract, and fraudulent suppression and deceit under Alabama state law. All of plaintiffs' claims arise out of actions taken by defendants in connection with the administration of the Etha T. King Irrevocable Trust ("the Trust").[1]

Defendants removed the case to this court on November 4, 2010, asserting

---

[1] *See* doc. no. 1 (Notice of Removal), at Exhibit A (Complaint).

federal jurisdiction based upon satisfaction of the diversity statute, 28 U.S.C. § 1332.[2] Defendants claim that complete diversity of citizenship exists, even though the complaint states that all plaintiffs and all individual defendants (Vickers, Walker, and Robinson) are residents of Alabama. According to defendants, Vickers actually is a resident of Louisiana, and Robinson and Walker were fraudulently joined in order to defeat diversity jurisdiction. Plaintiffs dispute defendants' allegations about Vickers's residency and the fraudulent joinder of Robinson and Walker.[3]

The court subsequently ordered plaintiffs to respond to defendants' allegations of fraudulent joinder,[4] and plaintiffs complied by filing a brief in response to defendants' notice of removal and a motion to remand the case to state court.[5]

Defendants also filed a counterclaim against plaintiffs for attorney's fees and expenses pursuant to § 19-3B-709(a)(1) of the Alabama Uniform Trust Code, Ala.

---

[2]That statute provides, in pertinent part, that

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —
>
> (1)     citizens of different States . . . .

28 U.S.C. § 1332(a)(1).

[3]It is undisputed that the amount in controversy exceeds $75,000.00, the jurisdictional minimum.

[4]Doc. no. 3.

[5]Doc. no. 4.

Code § 19-3B-709(a)(1).[6] Plaintiffs moved to dismiss that counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.[7] In support of their motion to dismiss, plaintiffs assert the same arguments they advanced in support of their motion to remand.[8]

Plaintiffs' motion to remand and motion to dismiss defendants' counterclaim currently are before the court.

## I. MOTION TO REMAND

**A.    Standard of Review**

Federal district courts are tribunals of limited jurisdiction, "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of South Alabama v. The American*

---

[6]Doc. no. 2 (Answer and Counterclaim), at 20-21. Section 19-3B-709(a)(1) provides:

> A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate for:
>
> (1) expenses that were properly incurred in the administration of the trust, including the defense or prosecution of any action, whether successful or not, unless the trustee is determined to have willfully or wantonly committed a material breach of the trust . . . .

Ala. Code § 19-3B-709(a)(1) (1975).

[7]Doc. no. 6.

[8]*See id.* at 1 ("In more particular support of this Motion, Plaintiffs/ Counter Defendants adopt and incorporate by reference as if fully set out herein their Motion to Remand previously filed in this cause.").

3

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Accordingly, an "Article III court must be sure of its own jurisdiction before getting to the merits" of any action. *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89 (1998)). A removing defendant bears the burden of proving that federal jurisdiction exists. *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)); *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) ("[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citing *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). Accordingly, removal statutes must be construed narrowly, and "all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir. 2001) (citing *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)).

**B.     Fraudulent Joinder**

Defendants argue that Vickers, Robinson, and Walker were fraudulently joined in order to defeat diversity jurisdiction. Jurisdiction under 28 U.S.C. § 1332 requires

"complete diversity" — the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994) (citing *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L. Ed. 435 (1806)). An action may nevertheless be removable if the joinder of non-diverse parties is deemed to have been "fraudulent": *i.e.*, for the purpose of defeating federal jurisdiction. *See, e.g.*, *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 97 (1921) (holding that a diverse defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy").

The filing of a frivolous or other illegitimate claim against a non-diverse defendant is characterized as "fraudulent joinder," and a district court may disregard the citizenship of such defendants. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979).[9] The doctrine of fraudulent joinder thus is an exception to the requirement that parties must be completely diverse, and provides that an action may be removed from state court, despite a lack of complete diversity of citizenship among the parties, if the plaintiff's joinder of a non-diverse party was fraudulent. *See, e.g.*, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

---

[9]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc)*, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Traditionally, courts have deemed a joinder to be "fraudulent" in two situations: "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. . . . The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs*, 154 F.3d at 1287; *see also, e.g.*, *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("In a removal case alleging fraudulent joinder, the removing party has the burden of proving either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.") (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). The burden of proving fraudulent joinder rests with the removing defendant. *See Coker*, 709 F.2d at 1440. The claim must be supported by clear and convincing evidence. *Parks v. New York Times*, 308 F.2d 474, 478 (5th Cir. 1962).

**C.   Vickers's Citizenship**

Defendants first assert that plaintiffs fraudulently pled jurisdictional facts with regard to Vickers's citizenship in order to defeat diversity jurisdiction. Plaintiffs alleged in their complaint that Vickers "is an adult resident citizen of the State of Alabama, was an employee of Wachovia and/or Wells Fargo, and at relevant times

was a Trust officer and 'advisor' responsible for managing the Trust."[10] If that allegation is correct, then complete diversity does not exist, because all plaintiffs also are Alabama citizens. Defendants argue, however, that plaintiffs' allegation about Vickers's citizenship is *not* correct, because Vickers actually is a citizen of the State of Louisiana.

> Citizenship is equivalent to "domicile" for purposes of diversity jurisdiction. *See Hendry v. Masonite Corp.*, 455 F.2d 955, 955 (5th Cir. 1972). "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom . . . .'" *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir. 1974), *cert. denied*, 419 U.S. 842, 95 S. Ct. 74, 42 L. Ed. 2d 70 (1974) (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). Furthermore, a change of domicile requires "[a] concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely . . . ." *Id.*

*McCormick v. Aderholt,* 293 F.3d 1254, 1257-58 (11th Cir. 2002) (footnote omitted).[11]

---

[10]Complaint, at ¶ 8.

[11]This court notes that "domicile" is not the same thing as "residency" for purposes of diversity jurisdiction. As one district court has stated,

> a person residing in a particular state is not necessarily domiciled there, and therefore is not necessarily a citizen of that state. *See, e.g., Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S .Ct. 1597, 104 L. Ed.2d 29 (1989) (observing that "one can reside in one place but be domiciled in another"); *Chico v. Puerto Rico Elec. Power Authority*, 312 F. Supp. 2d 153, 157 (D. P.R. 2004) ("Mere residence is insufficient to determine a party's jurisdictional status."). That said, while the two concepts are analytically distinct, a party's place of residence is *prima facie* evidence of his domicile. *See Chaara v. Intel Corp.*, 410 F. Supp.2d 1080, 1091 (D. N.M. 2005) ("Residence alone is not the equivalent of citizenship, but the place of residence is *prima facie* the domicile.") (citations omitted); *Audi Performance &*

> "When . . . a party contends that it has changed its domicile, and that contention has been challenged by the opposing party, there is a presumption of continuing domicile that must be overcome." *Reynolds v. Wohl*, 332 F. Supp. 2d 653, 656 (S.D. N.Y. 2004). This presumption imposes "a heavier burden on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Audi*[ *Performance and Racing, LLC v. Kasberger*], 273 F. Supp. 2d [1220,] 1226 [(M.D. Ala. 2003)] (citation omitted).

*Slate v. Shell Oil Co.,* 444 F. Supp. 2d 1210, 1216 (S.D. Ala. 2006).  Furthermore,

> [d]etermination of a party's domicile requires a "totality of the circumstances" approach weighing a constellation of objective facts, no single one of which is entitled to controlling weight. *See Macone v. Nelson*, 274 F. Supp. 2d 136, 139 (D. P.R. 2003); *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 351 (S.D. N.Y. 2003); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1227 (M.D. Ala. 2003). Among the numerous indicia considered are the state(s) where civil and political rights are exercised, where taxes are paid, where real and personal property are located, where driver's and other licenses are obtained, where mail is received, where telephone numbers are maintained and listed, where bank accounts are maintained, where places of business or employment are located, and where memberships in local professional, civil, religious or social organizations are established. *See Macone*, 274 F. Supp. 2d at 139; *Greenblatt*, 265 F. Supp. 2d at 351; *Audi*, 273 F. Supp. 2d at 1226. In addition to these objective criteria, the domicile inquiry also considers a party's subjective statements of intent, although such representations are not dispositive. *See Audi*, 273 F. Supp. 2d at 1227 (statements of intent are also considered in determining domicile, but may be negated by other declarations or inconsistent acts).

---

*Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (recognizing presumption that state of residence equates to domicile).

*Slate v. Shell Oil Co.,* 444 F. Supp. 2d 1210, 1215 n.9 (S.D. Ala. 2006).

*Slate,* 444 F. Supp. 2d at 1215 (footnotes omitted).

To support their argument that Vickers's domicile changed from Alabama to Louisiana, defendants have submitted two declarations executed by Vickers. Vickers acknowledges that he lived in Birmingham, Alabama, from March of 2005 to April of 2010, while he was employed by defendant Wells Fargo Bank, N.A.[12] However, since April 19, 2010, Vickers has been employed by Whitney National Bank in New Orleans, Louisiana.[13] He has lived in New Orleans since April 19, 2010, in housing provided by Whitney National Bank.[14] Even so, he still owns a house in Birmingham, Alabama. The Birmingham house currently is on the market for sale, but Vickers's wife and children still reside there, and the address of the Birmingham house is where Vickers was served by certified mail with a copy of the summons and complaint in this case.[15] Vickers states that he has "no intention of moving [his] permanent residence back to Alabama," and that he "intend[s] to reside in the State of Louisiana for the foreseeable future and [has] no present or future intentions to change [his] residency from the State of Louisiana."[16] Since moving to New Orleans, Vickers has

---

[12]Doc. no. 1 (Notice of Removal), Exhibit C (Declaration of G. Stephen Vickers), at ¶ 2.

[13]*Id.* at ¶ 3.

[14]*Id.* at ¶ 4.

[15]*Id.* at ¶ 5. *See also* doc. no. 8 ("Defendants' Reply in Support of Their Notice of Removal, Response to Plaintiffs' Motion to Remand, and Response to Plaintiffs' Motion to Dismiss"), Exhibit G (Supplemental Declaration of G. Stephen Vickers), at ¶ 2.

[16]First Vickers Declaration, at ¶¶ 5-6.

opened a bank account with a New Orleans branch of his employer, Whitney Bank.[17] Also, "[i]n furtherance of [his] new employment in New Orleans," Vickers has joined a professional organization called the New Orleans Estate Planning Council, which is comprised of attorneys, certified public accountants, insurance professionals, and bank trust officers who work in estate planning.[18]

Other than Vickers's self-serving statement that he has no intention of returning to Alabama, the only evidence to support a change of domicile is Vickers's employment by a bank in Louisiana, his lodging in housing provided by his new employer, the bank account he opened with his employer bank, and his membership in a professional association.  The court concludes that evidence is insufficient to satisfy defendants' heavy burden of establishing a change in domicile, especially in light of the evidence that Vickers's wife and children still reside in Alabama, and that Vickers accepted service of process at their residence in Alabama.  The facts that Vickers currently works and resides (on at least a part-time basis) in Louisiana, that he joined one professional organization to further his career, and that he has placed his Alabama home on the market for sale indicate that he may intend to change his domicile sometime in the future, but they do not constitute clear and convincing proof

---

[17]Supplemental Vickers Declaration, at ¶ 3.
[18]*Id.* at ¶ 4.

of a change of domicile that already has taken place. *See Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir. 1972) ("Under all of the circumstances of this case, Paul proved only that at the time he was served with process, he had an intention to change his domicile at some future time.  The only home he owned at the time of service was in Mississippi, all of his household furnishings were there, his family still lived there, and he still voted as a Mississippi resident.  Only his working time was spent in Chicago.  The burden was on Paul to show that he changed his domicile prior to service. . . .  The evidence proves the case against him.").

In summary, defendants have failed to satisfy their heavy burden of proving that Vickers changed his domicile from Alabama to Louisiana.  Accordingly, the presumption that Vickers remained a citizen of Alabama is undisturbed.  As such, complete diversity of citizenship is lacking, and there is no federal subject matter jurisdiction.[19]

## II. MOTION TO DISMISS COUNTERCLAIM

Plaintiffs' motion to dismiss the counterclaim defendants asserted against them is premised solely on the argument that there is no subject matter jurisdiction over the counterclaim.  For the reasons set forth above, the court agrees with plaintiffs.

---

[19]Because the diversity statute requires *complete* diversity of citizenship, Vickers's Alabama citizenship is enough, standing alone, to defeat diversity.  Therefore, the court need not consider defendants' argument that there is no possibility for plaintiff to state a cause of action against Robinson and Walker.

Accordingly, plaintiffs' motion to dismiss defendants' counterclaim is due to be granted.

### III. CONCLUSION

In accordance with the foregoing, plaintiffs' motion to remand will be granted, and this case will be remanded to the Circuit Court of Lauderdale County, Alabama, from which it was removed. Plaintiffs' motion to dismiss defendants' counterclaim also will be granted. An appropriate order will be entered contemporaneously herewith.

DONE this 6th day of January, 2011.

_____
United States District Judge